# United States District Court

SOUTHERN _____ DISTRICT OF _____ FLORIDA

FILED by _____ D.C.
APR 2 0 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA

V.

CARLOS REVELO and MANUEL FERNANDO REVELO

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: 00-4085-BSS

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about April 19, 2000, in Broward County, in the Southern District of Florida, defendant did

knowingly and intentionally conspire to and did possess with intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of heroin, (1)

in violation of Title __21__ United States Code, Sections __841(a) and 846__

I further state that I am a(n) __Special Agent/ DEA__ and that this complaint is based on the following
                                    Official Title
facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached and made a part hereof:  [x] Yes  [ ] No

_____
Signature of Complainant

Sworn to before me, and subscribed in my presence,

April 20, 2000                                          at   Fort Lauderdale, Florida
Date                                                         City and State

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE                          _____
Name and Title of Judicial Officer                      Signature of Judicial Officer

## AFFIDAVIT

I, Dean Wolpert, being duly sworn, depose and state:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have served in this capacity for approximately three months. Immediately before that, I served as a police officer with the City of Fort Worth Police Department from 1994 through 1999. As a Special Agent with DEA, my primary responsibility includes investigating violations of Title 21 of the United States Code. As a DEA agent, I have participated in numerous investigations involving the illegal trafficking of cocaine, heroin and marijuana in the United States.

2. I have a Bachelor of Science with honors degree in criminal justice from East Tennessee State University. For my position as a Special Agent with DEA, I have successfully completed training at the DEA Academy at Quantico, Virginia. For my position as a police officer with Fort Worth, I have successfully completed six months of training at the Fort Worth Police Academy. During the course of my employment I have conducted investigations utilizing surveillance techniques, interviewing third parties, executing search warrants, and executing arrest warrants.

3. I have been working on a criminal investigation with other agents from DEA and Customs. Additionally, local law enforcement officers have assisted us in the course of this investigation. The information detailed below comes from information provided to me by the federal and state law enforcement personnel involved in this investigation and my own personal investigation. Since this affidavit is being submitted for the limited purpose of securing a ~~search warrant~~ complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of the ~~complaint~~ complaint.

4. In late January, 2000, a confidential source[1] provided DEA officials with information that a woman who was internally carrying heroin would be attempting to enter the United States from Cali, Colombia, through Miami International Airport. The source provided a detailed description of the woman and what she would be wearing. Additionally, he gave DEA officials the woman's flight information, including the date, time, and flight number of the flight upon which the woman would be arriving. The source also stated that the woman would be internally carrying seventy-five pellets of heroin. The source further explained that the heroin was being sent by Jaime Revelo and that the source and Carlos Revelo were to meet the woman at the airport and provide the woman with a safe haven at which she could pass the heroin pellets. The source explained that he was also to provide a United States buyer for the heroin.

5. On January 30, 2000, Luz Alvarez flew into Miami International Airport from Cali, Colombia, onboard the exact flight at the exact time that the source had provided to the agent. Alvarez, who waived her Miranda rights, admitted to carrying seventy-five pellets of heroin internally. She further told Customs officials that she received the heroin from "Jimmy" in Cali, Colombia, and that he had arranged for individuals to meet her at the airport to provide a safe haven for her to pass the heroin pellets.

6. On February 17, 2000, the source stated that he met with Carlos Revelo and Revelo provided him with a free sample of heroin so that the source could provide the heroin to the buyer. The source provided DEA officials with the sample that he received. That sample tested 89% pure heroin.

---

[1] For purposes of this affidavit, the confidential source will be referred to by male gender. This description is not intended to imply that the source is in fact male.

7. On April 17, 2000, the source and an undercover agent met with Carlos Revelo at Champs Restaurant at 6401 N. Andrews Avenue, Fort Lauderdale. During this meeting, Revelo discussed selling upwards of one kilogram of heroin. Additionally, Revelo stated that he was in possession of 670 grams of heroin at the time. The three then discussed the price for the 670 grams of heroin. The three reached an agreement that the undercover agent would pay $47,000 for 670 grams of heroin. Revelo provided the undercover agent with a number at which to reach him. That number was 561-750-0871. They agreed to meet the following day to make the transaction.

8. On April 18, 2000, the undercover agent called Revelo at 561-750-0871 repeatedly. During these conversations Revelo and the agent discussed the location at which and manner in which the transaction was to be conducted. Among other locations, Revelo asked the agent to come to his house to conduct the transaction. The agent declined. These telephone calls were tape-recorded. In another telephone call on April 18, 2000 -- this one between the source and Revelo -- Revelo told the source that he now had 750 grams of heroin. The source told Revelo to bring the additional heroin with him to the meeting, and the undercover agent would pay for it later.

9. On April 19, 2000, the agent again contacted Revelo at 561-750-0871. The two agreed that the source would pick up Revelo and his brother Manuel Fernando Revelo at Revelo's house. They further agreed that the source would transport the Revelos to the BrandsMart parking lot located at I-95 and Southwest Tenth Street, where they would meet the agent. Revelo agreed to show the heroin to the agent at the parking lot. Then Revelo and the agent were to proceed to a second location to make the exchange.

10. On April 19, 2000, at approximately 11:20 a.m., the source arrived at the residence of the Revelos located at 1519 S.W. 6th Court, Boca Raton, Florida 33486. Before the source drove to the Revelos' residence, law enforcement officials searched him and his vehicle, a tan Ford Aerostar van, with negative results. Law enforcement officials then followed the source as he proceeded to the Revelos' residence.

11. At the residence, law enforcement officers surveilled Manuel and Carlos Revelo as they left the house. Manuel entered the source's van, and Carlos entered a white Suzuki Swift. Law enforcement officers followed both vehicles to the BrandsMart meeting location.

12. When the cars arrived at the BrandsMart, the undercover agent met in the parking lot with Carlos and Manuel Revelo, as well as the source. The undercover agent looked into the Suzuki and observed heroin in a black CaseLogic CD case. The Revelos were then arrested.

13. During a search incident to the arrest of Manuel Revelo, law enforcement officers discovered thirty-two pellets of heroin in his right sock and nine pellets of heroin in his right front pants pocket. The total amount of heroin found was 111 pellets, with a gross weight of over 800 grams.

14. The Revelos reside at 1519 S.W. 6th Court, Boca Raton, Florida 33486. An AUTOTRAC search reveals that the telephone number 561-750-0871 is the telephone number for 1519 S.W. 6th Court, Boca Raton, Florida 33486. Carlos Rivera also confirmed after his arrest that his home telephone number is 561-750-0871.

15. Based on the allegations stated above, there is probable cause to believe that Manuel and Carlos Revelo have committed violations of Title 21, United States Code, Sections 841(a)

and 846.

_____
DEAN WOLPERT
Special Agent
Drug Enforcement Administration

Subscribed to and sworn to me
this ___ day of April, 2000.

_____
BARRY SELTZER
UNITED STATES MAGISTRATE JUDGE

-5-